IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **GENE R. COPLEN**, | Case No. 6:15-CV-01715-SU |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

SULLIVAN, Magistrate Judge:

Gene Coplen ("plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II disability insurance benefits under the Social Security Act. All parties have consented to a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

Page 1 - OPINION AND ORDER

**PROCEDURAL BACKGROUND**

On May 15, 2012, plaintiff applied for disability insurance benefits. Tr. 149-50. His application was denied initially and upon reconsideration. Tr. 97-108. On December 23, 2013, a hearing was held before an administrative law judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-73. On April 15, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Social Security Act. Tr. 15-27. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 6-9.

**FACTUAL BACKGROUND**

Born on April 21, 1965, plaintiff was 43 years old on the alleged onset date of disability and 48 years old at the time of the hearing. Tr. 37. Plaintiff left high school during the tenth grade. Tr. 37, 163. He worked previously as a dishwasher, bouncer, and construction worker. Tr. 67, 163. Plaintiff alleges disability beginning January 15, 2009, due to diabetes, sleep disorder, and pain in his knees, back, and shoulders. Tr. 149, 162.

**STANDARD OF REVIEW**

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant

if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have such an impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can perform past work, he is not disabled; if a claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the

Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined that plaintiff had the following severe impairments: "morbid obesity, insulin-dependent diabetes mellitus type II with lower extremity peripheral neuropathy pain, status post bilateral rotator cuff repair and clavicle resection, mild cervical degenerative disc disease, status post right knee replacement, mild lumbar degenerative disc disease, left greater trochanteric bursitis, and obstructive sleep apnea." *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) except:

> [He] can lift and/or carry ten pounds occasionally and less than ten pounds frequently. He is able to stand and walk in combination for two hours in an eight-hour workday and is able to sit for at least six hours in an eight-hour workday. He requires the option to sit or stand a[t] will while still performing essential tasks. He can never climb ladders, ropes, or scaffolds. He can never reach above shoulder height. Due to marijuana use, he should not be exposed to hazards such as working at unprotected heights or operating large moving equipment. He can occasionally climb ramps and stairs. He can never crawl, kneel, or crouch. He can occasionally stoop. He can understand, remember, and carry out simple instructions in a setting with low literacy requirements.

Tr. 20.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 25. At step five, the ALJ found that plaintiff could perform a significant number of jobs existing in the national economy despite his impairments. Tr. 26-27. Accordingly, the ALJ concluded that plaintiff was not disabled under the Social Security Act. Tr. 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting medical opinion evidence from Richard Alley, M.D.; and (2) failing to resolve alleged inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

I.  Medical Opinion Evidence

Plaintiff contends that the ALJ neglected to provide legally sufficient reasons for rejecting the opinion of Dr. Alley, a state agency consulting source. Specifically, plaintiff asserts that the ALJ's RFC is deficient because it did not incorporate Dr. Alley's reaching restriction.

As a preliminary matter, however, plaintiff asserts the opinions of non-examining doctors hold similar import to those of examining or treating doctors, such that the "clear and convincing" standard applies. Pl.'s Opening Br. 4; Pl.'s Reply Br. 1-2. To the contrary, it is well-established that, "[o]f the three types of medical opinions, those of non-examining doctors are afforded the least amount of weight," such that "the opinion of a non-examining doctor 'cannot by itself constitute substantial evidence.'" *Dennis v. Astrue*, 2012 WL 730260, *7 (D. Or. Mar. 6, 2012), *recons. granted on other grounds*, 2012 WL 1388390 (D. Or. Apr. 20, 2012) (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("the opinions of examining physicians are afforded more weight than those of non-examining physicians,

Page 5 - OPINION AND ORDER

and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians"). As a result, the ALJ may "reject the opinion of a non-examining physician by reference to specific evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

In August 2012, Dr. Alley reviewed the medical record at the request of the Commissioner and prepared a physical RFC. Tr. 78-82. Dr. Alley opined that plaintiff was capable of occasionally lifting/carrying 25 pounds, frequently lifting/carrying ten pounds, standing/walking for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, and occasionally climbing ladders/ropes/scaffolds. Tr. 80-81. According to Dr. Alley, plaintiff was not impaired in his ability to climb ramps/stairs, balance, stoop, kneel, crouch, crawl, push/pull, handle, finger, or feel. Tr. 81. The doctor also remarked that plaintiff's ability to reach was limited to "occ[asional] in all directions with L shoulder" and "freq[uent] front/lateral reach with R shoulder, and occ[asional] overhead reach with R shoulder." *Id.*

After plaintiff filed his request for reconsideration, the Commissioner solicited the opinion of another state agency consulting source. Tr. 84. In January 2013, Martin Kehrli, M.D., reviewed the medical record and issued a second physical RFC. Tr. 88-93. Dr. Kehrli opined that plaintiff was capable of occasionally lifting/carrying 20 pounds, frequently lifting/carrying ten pounds, standing/walking for two hours in an eight-hour workday, sitting for six hours in an eight-hour workday, never climbing ladders/ropes/scaffolds, frequently balancing, and occasionally climbing ramps/stairs, stooping, kneeling, crouching, and crawling. Tr. 80-81. The doctor indicated that plaintiff was not impaired in his ability to push/pull, handle, finger, or feel. Tr. 92. Regarding the ability to reach, Dr. Kehrli commented that plaintiff was limited to no overhead reaching with either arm. Tr. 92-93.

Because there was no medical statement from any treating or examining source, the ALJ's assessment of the opinion evidence focused exclusively on Drs. Alley and Kehrli:

> In the opinion of State agency physical consultants, Richard Alley, M.D., and Martin Kehrli, M.D., the claimant is able to lift and/or carry ten pounds frequently and twenty pounds occasionally. He is able to stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. He is able to stoop, kneel, crouch, crawl, and climb ramps or stairs occasionally. He is able to balance frequently. He is never able to climb ladders, ropes, or scaffolds. The reconsideration consultant limited the claimant to no overhead reaching with his bilateral upper extremities due to rotator cuff repairs with ongoing pain symptoms. The initial consultant also limited the claimant to only occasional reaching in all directions with the left shoulder, frequent front and lateral reaching with his right shoulder, and occasional overhead reaching with the right shoulder. Both consultants opined that the claimant has no visual, communicative, or environmental limitations. The opinions of Drs. Alley and Kehrli are somewhat consistent with the evidence of record. However, the record supports further reduction in exertional and postural limitations due to ongoing subjective reports of upper and lower extremity pain and discussed above. For example, the record supports more limitations on his ability to perform postural positions that required both the upper and lower body, such as with crawling, kneeling, or crouching, due to the claimant's subjective complaints of pain in his left shoulder, left hip, and right knee. His left hip complaints, which surfaced after Drs. Alley and Kehrli offered their opinions, also supports a sit/stand option, as discussed above. Drs. Alley and Kehrli had the opportunity to review the records at the time of their opinions and adequately considered the claimant's subjective complaints at that time. For the reasons stated above, the opinion of Drs. Alley and Kehrli are given only some weight.

Tr. 25 (internal citations omitted).

The Court finds that the ALJ did not commit harmful legal error in evaluating the medical opinion evidence. Dr. Alley's RFC is overall far less restrictive than Dr. Kehrli's RFC, which, in turn, largely corresponds to the ALJ's RFC. *Compare* Tr. 20, 80-81, *with* Tr. 91-93. In other words, unlike with Dr. Alley, the ALJ did not plainly omit any aspect of Dr. Kehrli's opinion; rather, she merely supplemented it with evidence post-dating January 2013. Tr. 20-25. Thus, the ALJ's evaluation of the state agency consulting sources, especially when read in context of the broader RFC discussion, indicates that she elected to afford greater weight to the subsequent opinion of Dr. Kehrli

Page 7 - OPINION AND ORDER

because it was more consistent with the record. Courts within this District have affirmed the ALJ's disregard of medical opinion evidence under analogous circumstances. *See, e.g.*, *Cole v. Colvin*, 2016 WL 4154934, *6 (D. Or. Aug. 2, 2016) (affirming the ALJ's rejection of restrictions identified by state agency consulting sources where they were contradicted by the subsequent reports of other state agency consulting sources) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Additionally, the ALJ found that plaintiff was not fully credible, a finding that plaintiff does not now challenge on appeal. Tr. 20-25; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts only considers issues which are argued specifically and distinctly in a party's opening brief). In discrediting plaintiff's subjective symptom testimony concerning the severity of his shoulder impairment, the ALJ relied on the lack of corroborating medical evidence, as well as the fact that plaintiff's hearing testimony was inconsistent with his ability to use a cane and contemporaneous statements to treatment providers. Tr. 21-24.

Specifically regarding the latter, the ALJ pointed to numerous references in the record evincing that plaintiff worked after the alleged onset. *See, e.g.*, Tr. 255 (plaintiff reporting in October 2010 that he was "dragging and lifting 24ft sheet of metal at work yesterday"), 271 (plaintiff reporting in January 2010 that he "did construction work and now does tree limb cutting"), 275 (plaintiff reporting in March 2012 that he "has done a lot of heavy physical labor [and] still does some work, mostly weeding"), 294 (plaintiff reporting in December 2009 that he "has been doing construction work [and] trying to work a lot"), 386 (plaintiff reporting in May 2011 that he was "currently using a chainsaw at work, he is able to start it and use it as long as he keeps it at the level of his waist"), 476 (plaintiff reporting in November 2011 that he "had returned to work" after shoulder surgery). When confronted with this evidence, plaintiff asserted that he was referring to

housework, as opposed to "a real job," despite the fact that he denied performing any housework due to his impairments earlier in the hearing. Tr. Tr. 24, 49, 63; *see also* Tr. 473 (plaintiff reporting in February 2013 that he was "still quite functional at home").

Although the ALJ did not explicitly link her discussion of plaintiff's credibility to Dr. Alley's opinion, she addressed both issues as part of the same larger task - *i.e.*, formulating the RFC - pursuant to which she extensively discussed the evidence of record. Tr. 20-25. Accordingly, it is reasonable to infer that, in evaluating Dr. Alley's opinion, the ALJ declined to credit any limitation that was inconsistent with the evidence undermining plaintiff's self-reports. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

Even assuming the ALJ erred in regard to this issue, such an error is harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also Dennis*, 2012 WL 730260 at *7-8 (ALJ's failure to discuss the restrictions identified by one state agency consulting source was harmless error because "that assessment, alone, does not establish the extent of plaintiff's impairment," and the other state agency consulting sources "opined that plaintiff had fewer and less severe limitations") (citations omitted). Furthermore, as discussed in greater detail below, the VE testified that a hypothetical individual with a reaching restriction comparable to Dr. Alley's could perform a significant number of jobs in the national and local economy. *Compare* Tr. 67-68 (VE testifying plaintiff could perform representative occupations requiring frequent reaching while still being limited to no bilateral overhead reaching and only occasional reaching below shoulder level with one arm), *with* Tr. 81-82 (beyond the reaching restriction in the ALJ's RFC - *i.e.*,

no bilateral overhead reaching - Dr. Alley limited plaintiff to occasional front and lateral reaching with one arm, and frequent front and lateral reaching with the other arm). Therefore, reversal is not appropriate in regard to this issue.

II.     Inconsistencies with the DOT

Plaintiff argues that the ALJ erred at step five by relying on VE testimony that diverged from the DOT without explanation in two respects. First, plaintiff contends his reaching restriction precludes performance of the jobs identified by the VE. Second, he asserts that the VE's testimony concerning his non-exertional limitation to work involving simple tasks and low literacy is contravened by the DOT.

The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Before he may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In accordance with Social Security Ruling 00-4p, the ALJ must ask the VE if her testimony is consistent with the DOT. *Id.* at 1152-53. The failure to so inquire is a procedural error. Such an error is harmless if there is no conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Id.* at 1153-54; SSR 00-4p, *available at* 2000 WL 1898704.

At the hearing, the ALJ began by asking the VE: "if, at any time today, your testimony is inconsistent with the [DOT], will you point out the inconsistency and explain the reason for it?" Tr. 64. The VE responded in the affirmative. *Id.* The ALJ next queried whether a hypothetical individual

Page 10 - OPINION AND ORDER

matching plaintiff's age, education, work experience, and RFC could perform other work existing in the national economy. Tr. 67-68. The VE identified four positions: jewelry preparer, DOT § 700.687-062; eye glass assembler, DOT § 713.687-018; mold machine attendant, DOT § 754.685-014; and retail loss prevention, DOT § 379.367-010. Tr. 68-69. The ALJ also inquired if, "in addition to the limitations described, the individual could only occasionally reach forward with the right arm, at full extension, could the individual still perform any or all of these jobs?" Tr. 69. The VE stated the hypothetical individual would still "be able to perform all the jobs." *Id.* Except in one immaterial instance, the VE did not identify or explain any conflict with the DOT. Tr. 68-69. Although plaintiff's attorney cross-examined the VE, she did not challenge the VE's representation that his testimony was otherwise consistent with the DOT. Tr. 70-72.

Initially, as the parties recognize, there is no clear authority indicating whether a reaching restriction contravenes the DOT. *See Lamear v. Colvin*, 2014 WL 6809751, *1-2 (D. Or. Dec. 1, 2014) (observing that district courts within the Ninth Circuit "are divided on the question of whether . . . reaching, handling, or fingering in the DOT requires the ability to use both arms or hands [in all directions], and there is no controlling precedent") (citations and internal quotations omitted); *but see Gonzales v. Colvin*, 2013 WL 3199656, *4 (D. Or. June 19, 2013) (because "many DOT descriptions specifically indicate when overhead work is involved," the fact that the representative occupations identified by the VE did "not mention overhead work" meant that the court "would have to read a requirement into the DOT that is not expressly stated therein" in order to find an apparent conflict). The Court therefore declines to attempt to resolve this division or state a general rule. Rather, the Court finds that, under the particular facts of this case, the ALJ did not err in determining that plaintiff could perform the reaching requirements of the jobs identified by the VE.

Further, plaintiff stipulates that "the job of Eyeglass Assembler . . . fits the limitation of understanding, remembering and carrying out simple instructions in a setting with low literacy requirements."[1] Pl.'s Opening Br. 11. The VE testified that there are 68,000 eyeglass assembler positions in the national economy. Tr. 68. Thus, even assuming a conflict exists between plaintiff's non-exertional limitation and the remaining three representative occupations identified by the VE, reversal would not be warranted as the significance requirement is satisfied by the eyeglass assembler position, alone. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (25,000 nationwide jobs significant); *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (if "either [the incidence of regional or national jobs] is significant, then [the court] must uphold the ALJ's decision") (citation and internal quotations omitted).

As the Commissioner notes, the "restriction on literacy requirements relates to GED language development, not GED reasoning development," and three of the jobs identified by the VE are "categorized in the DOT as GED Language level 1, the very lowest level."[2] Def.'s Resp. Br. 10 (citing DOT § 700.687-062, *available at* 1991 WL 678927 (jewelry preparer); DOT § 713.687-018, *available at* 1991 WL 679271 (eye glass assembler); DOT § 754.685-014, *available at* 1991 WL 680374 (mold machine attendant)). Moreover, a limitation to simple, routine tasks is compatible with Level Two Reasoning. *See Xiong v. Comm'r Soc. Sec. Admin.*, 2010 WL 2902508, *6 (E.D.

---

[1] Plaintiff also acknowledges that the position of "retail loss prevention does not require any reaching." Pl.'s Opening Br. 8. The Commissioner "concedes that the [job of retail loss prevention] is categorized in the DOT as GED reasoning level 3 and GED language level 3, which creates an unresolved conflict." Def.'s Resp. Br. 11.

[2] Perhaps recognizing this, plaintiff abandons her argument regarding the literacy requirement in her reply brief. *See* Pl.'s Reply Br. 5-6 (asserting only that position of retail loss prevention, which requires Level Three Reasoning, is inconsistent with a limitation of understanding, remembering, carrying simple instructions).

Cal. July 22, 2010) ("[c]ourts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two") (collecting cases). As such, because the positions of jewelry preparer, eyeglass assembler, and mold machine attendant require Level One Language and no greater than Level Two Reasoning, no apparent conflict exists between the VE's testimony and the DOT.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this <u>30th</u> day of November, 2016.

   /s/ Patricia Sullivan   
Patricia Sullivan
United States Magistrate Judge

Page 13 - OPINION AND ORDER